FILED
electronically
Clerk of Court
U.S. Bankruptcy Court
Eastern District of Texas
Date: 12/28/2005
Time: 14:15:36
Pages: 12

_1228141533_001.PDF
P-113580093692
3B16EC0008E4BF76

Alfred N. Kay, Jr.
State Bar No. 11119450
P.O. Box 1699
Van Alstyne, Texas 75495
903-482-6171 - Office
judgment46@texoma.net
Counsel For JW Partners, Ltd.

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IN RE:

§
§                    CASE NO. 05-41327
WILLIAM ANTHONY TAYLOR,      §       CHAPTER 7
§
§
DEBTOR.                      §

JW PARTNERS, LTD. OBJECTION TO CHAPTER 7 TRUSTEE'S MOTION
FOR SALE OF DEBTOR'S INTEREST IN REAL PROPERTY FREE AND
CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND MOTION FOR
TRUSTEE TO ACCEPT JW PARTNERS, LTD. BID OF $325,000.00 TO
PURCHASE DEBTOR'S INTEREST IN REAL PROPERTY FREE AND CLEAR
OF LIENS

TO THE HONORABLE BRENDA T. RHOADES:

COMES NOW, JW Partners Ltd. ("JW Partners"), and files this it's Objection To Chapter 7 Trustee's Motion For Sale Of Debtor's Interest In Real Property Free And Clear Of Liens, Claims And Encumbrances And Motion For Trustee To Accept JW Partners Ltd. Bid of $325,000.00 To Purchase Debtor's Interest In Real Property Free And Clear Of Liens and in support hereof would respectfully show this Court the following:

1. On or about December 21, 2005, Linda Payne, Chapter 7 Trustee in the instant Chapter 7 bankruptcy ("Trustee") filed a  Motion For Sale Of Debtor's Interest In

Real Property Free And Clear Of Liens, Claims And Encumbrances, With Liens To Follow Proceeds (Motion For Sale Of Real Property").

2. The Trustee in her Motion For Sale Of Real Property requests this Court's permission to sell Debtor's interest in an approximately 45 acre tract of land in Collin County, Texas situated in Abstracts A-822 and A-760 ("Subject Property") to John Altus and/or assigns ("Altus") for the sum of $315,077.00. The Trustee requests that the Subject Property be sold "as is", "where is", without any warranties of title, with the exception that it will be conveyed free and clear of all liens, claims and encumbrances created by virtue of the bankruptcy estate. The Trustee further requests that if her Motion For Sale Of Real Property is approved by this Court that Altus have ten (10) days to remit the purchase price of $315,077.00 to her.

3. JW Partners herby formally offers to purchase the Subject Property upon the same terms and conditions offered to Altus for the higher purchase price of $325,000.00. A true and correct copy of the Unimproved Property Contract that sets forth JW Partners written offer to purchase the Subject Property is attached hereto as Exhibit A and is incorporated herein. The executed original of this Unimproved Property Contract has been sent to Mr. Bill Payne, counsel for the Trustee.

4. JW Partners would show this Court that their higher offer of $325,000.00 to purchase the Subject Property benefits the Debtor's estate to a greater degree than the lower offer of Altus. JW Partners would also show that their offer adopts all of the same terms and conditions that the Trustee has offered Altus and uses the same Texas Real Estate Commission form to create a contract for sale of the Subject Property. The only variance between the offer of Altus and the offer of JW Partners is that JW Partners offer is $9,923.00 higher.

5. JW Partners objects to the Court approving the sale of the Subject Property to Altus for $9,923.00 less than JW Partners has offered. JW Partners requests that unless the Trustee accepts its higher offer of $325,000.00 to purchase the Subject Property and also requests this Court's approval of JW Partners higher offer that the Court set this matter down for hearing to determine why it would be in the best interest of the bankruptcy estate to sell the Subject Property to Altus for less money.

WHEREFORE, PREMISES CONSIDERED, JW Partners moves this Court to accept its offer of $325,000.00 to purchase the Subject Property and to reject the Trustee's request to sell the Subject Property to Altus for $315,077.00

Respectfully submitted,

Alfred N. Kay, Jr.
P.O. Drawer 1699
Van Alstyne, Texas
State Bar # 11119450
903-482-6171
Counsel for JW Partners

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Objection To Sale was forwarded to all parties listed on the matrix, on the 28th day of December, 2005.

Alfred N. Kay, Jr.

JW Partners Objection To Trustee's Motion For Sale - Page 3

William Anthony Taylor
4360 County Road 177
Celina, TX 75009

Gregory A. Whittmore
5910 N. Central Expressway #1010
Dallas, TX 75206

Buchanan & Burke, L.L.P.
5910 N. Central Expressway, = 200
Dallas, TX 75206

Collin County Tax A/C
c/o David McCall
777 East 15th Street
Plano, TX 75074

Lone Star Partners
c/o William L. Siegel
901 Main Street, Suite 4000
Dallas, TX 75202

Bill C. Hunter, A Pro. Corp.
5400 LBJ Freeway, Suite 945
Dallas, TX 75240

C. Kent Adams and/or Lone Star
Partners
11434 County Road 176
Celina, TX 75009

Collin County Tax
PO Box 8006
McKinney TX 75070

Davis Technologies International
4501 Ratliff Lane
Addison, TX 75001

Ed Pickett
Pickett & Maxwell, P.C.
P.O. Box 38128
Dallas, TX 75238

Enderby Gas
P.O. Box 1597
Sherman, TX 75091

F. O. Birmingham Memorial Land
Trust
301 N. Ballard
Wylie, TX 75098

F.O. Birmingham Mem Land Trust
c/o Bill Lewis
P.O. Box 546
Wylie, TX 75098-0546

Frisco ISD Tax
PO Box 547
Frisco TX 75034

Internal Revenue Service
P. O. Box 21126
Philadelphia, PA 19114

Jerry G. & Judy L. Curtis
c/o Alan S. Trust, Esq.
1201 Elm Street
Dallas, TX 75270

LandPlan Development
5400 Dallas Parkway
Frisco, TX 75034

Mrs. Ounita Hill
c/o Mr. Bobby Hill, Hill Ranch
3794 C Highway 67 West
Glen Rose, TX 76043

Ounita Hill
c/o Craig P Henderson, William L Wolf PC
5949 Sherry Lne Ste 550
Dallas TX 75225

Stanley D. & Leslie Strifler
c/o Alan S. Trust, Esq. 1201 Elm
Street, Suite 5270
Dallas, TX 75270

US Trustee
Office of the U.S. Trustee
110 N. College Ave., Suite 300
Tyler, TX 75702

C. Kent Adams
11434 County Road 176
Celina, TX 75009

Kevin Buchanan
c/o Howard Marc Spector, PC
12770 Coit Road, Suite 1100
Dallas, TX 75251

Stanley R. McWilliams
2703 Club Lake Trail
McKinney, TX 75070



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)        01-06-03

## UNIMPROVED PROPERTY CONTRACT
NOTICE:  Not For Use For Condominium Transactions

**1. PARTIES:** _____LINDA PAYNE, TRUSTEE, CHAPTER 7 CASE NO. 05-41327_____
(Seller) agrees to sell and convey to _____JW PARTNERS, LTD. and/or assigns_____
(Buyer) and Buyer agrees to buy from Seller the Property described below.

**2. PROPERTY:** Lot _____, Block _____, _____Addition,
City of _____, _____COLLIN_____ County,
Texas, known as _____Debtor's interest in the Ounita Hill property located in Abstracts___
_A-822 and A-760 on Collin County Roads #368 and 370, Collin County, Texas containing 45.001 ac. +/-_
(address/zip code), or as  described on attached exhibit together with all rights, privileges and
appurtenances pertaining thereto, including but not limited to: water rights, claims, permits,
strips and gores, easements, and cooperative or association memberships (the Property).

**3. SALES PRICE:**
A.   Cash portion of Sales Price payable by Buyer at closing .................$ _325,000.00_____
B.   Sum of all financing described below ......................................$_____
C.   Sales Price (Sum of A and B).....................................................$_325,000.00_____

**4. FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check
applicable boxes below)
❏ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount
of $_____.  If the Property does not satisfy the lenders' underwriting
requirements for the loan(s), this contract will terminate and the earnest money will be
refunded to Buyer. (Check one box only)
❏(1) This contract is subject to Buyer being approved for the financing described in the
attached Third Party Financing Condition Addendum.
❏(2) This contract is not subject to Buyer being approved for financing.
❏ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory
notes described in the attached TREC Loan Assumption Addendum.
❏ C. SELLER  FINANCING:  A  promissory  note  from Buyer to Seller of $_____,
bearing _____ % interest per annum, secured by vendor's and deed of trust liens, and
containing  the  terms  and  conditions  described  in  the  attached  TREC  Seller  Financing
Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with
a mortgagee policy of title insurance.

**5. EARNEST MONEY:**  Upon  execution  of  this  contract  by  both  parties,  Buyer  shall  deposit
$ 5,000.00_____ as earnest money with _Republic Title Co._____,
as escrow agent, at _2626 Howell St., Dallas, Texas 75204_____ (address).
Buyer shall deposit additional earnest money of $0.00_____ with escrow agent within
_____days after the effective date of this contract.  If Buyer fails to deposit the earnest
money as required by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**
A. TITLE POLICY: Seller shall furnish to Buyer at ❏Seller's  ☒Buyer's expense an owner policy of
title insurance (Title Policy) issued by __Republic Title Co._____
(Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer
against loss under the provisions of the Title Policy, subject to the promulgated exclusions
(including existing building and zoning ordinances) and the following exceptions:
(1) Restrictive covenants common to the platted subdivision in which the Property is located.
(2) The standard printed exception for standby fees, taxes and assessments.
(3) Liens created as part of the financing described in Paragraph 4.
(4) Utility easements created by the dedication deed or plat of the subdivision in which the
Property is located.
(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by
Buyer in writing.
(6) The standard printed exception as to marital rights.
(7) The  standard  printed  exception  as  to  waters,  tidelands,  beaches,  streams,  and  related
matters.
(8) The standard printed exception as to discrepancies, conflicts,  shortages  in  area  or  boundary

Initialed for identification by Buyer_____ and Seller _____  _____        **01A**  TREC NO. 9-5

Contract Concerning _____ 45.001 acres Abstract A-822 and A-760 _____ Page Two   01-06-03
(Address of Property)

lines, encroachments or protrusions, or overlapping improvements. Buyer, at Buyer's expense, may have the exception amended to read, "shortages in area".

B. COMMITMENT:  Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies  of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions.  Seller authorizes the Title Company to mail or hand deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21.  If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or the Closing Date, whichever is earlier.

C. SURVEY:  The survey must be made by a registered professional land surveyor acceptable to the Title Company and any lender. (Check one box only)
- ☐ (1) Within _____ days after the effective date of this contract, Seller, at Seller's expense, shall furnish a new survey to Buyer.
- ☐ (2) Within _____ days after the effective date of this contract, Buyer, at Buyer's expense, shall obtain a new survey.
- ☒ (3) Within ___5___ days after the effective date of this contract, Seller shall furnish Seller's existing survey of the Property to Buyer and the Title Company, along with Seller's affidavit acceptable to the Title Company for approval of the survey.  If the  survey is not approved by the Title Company or  Buyer's lender, a new  survey  will be  obtained at ☐ Seller's ☒ Buyer's expense no later than 3 days prior to the Closing Date.

D. OBJECTIONS: Within ___10___ days after Buyer receives the Commitment, Exception Documents and the survey, Buyer may object in writing to (i) defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (8) above; (ii) any portion of the Property lying in the 100 year flood plain as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity:_____
_N/A_____.
Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy.  If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MANDATORY OWNERS' ASSOCIATION MEMBERSHIP: The Property ☐ is ☒ is not subject to mandatory membership in an owners' association. If the Property is subject to mandatory membership in an owners' association, Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community in which the Property is located, you are obligated to be a member of the owners' association. Restrictive covenants governing the use and occupancy of the Property and a dedicatory instrument governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the owners' association. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of the Property.

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49,  Texas Water Code requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS:  If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract.  An addendum containing the notice promulgated by TREC or required by the parties must be used.

Initialed for identification by Buyer _____ and Seller _____ _____   **01A**  TREC NO. 9-5

Contract Concerning _____45.001 acres Abstract A-822 and A-760_____Page Three  01-06-03
(Address of Property)

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) UNIMPROVED PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER:  If the Property is located in a certificated service area of a utility service provider and the Property does not receive water or sewer service from the utility service provider on the date the Property is transferred, §13.257, Texas Water Code, requires a notice regarding the cost of providing water or sewer services to the Property. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT:  The Property ☐ is ☒ is not  located in a Texas Agricultural Development District.

7. **PROPERTY CONDITION:**

A. INSPECTIONS, ACCESS AND UTILITIES: Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Seller shall pay for turning on existing utilities.
**NOTICE**: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. ACCEPTANCE OF PROPERTY CONDITION: Buyer accepts the Property in its present condition; provided Seller, at Seller's expense, shall complete the following:__AS IS_____

C. COMPLETION OF REPAIRS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs prior to the Closing Date. All required permits must be obtained, and repairs must be performed by persons who are licensed or otherwise permitted by law to provide such repairs. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may do so and receive reimbursement from Seller at closing. The Closing Date will be extended up to 15 days, if necessary, to complete repairs.

D. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

E. SELLER'S DISCLOSURES:  Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
(1) any flooding of the Property which has had a material adverse effect on the use of the property;
(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
(3) any environmental hazards or conditions which materially affect the Property;
(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
(5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
(6) any threatened or endangered species or their habitat affecting the Property.

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**

A. The closing of the sale will be on or before __(see paragraph NO. 11)__, 20___, or within 7 days after objections to matters disclosed in the Commitment or by the survey have been cured, whichever date is later (Closing Date).  If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.

Initialed for identification by Buyer_____ and Seller _____ _____        **01A**  TREC NO. 9-5

Contract Concerning _____45.001 acres Abstract A-822 and A-760_____Page Four   01-06-03
(Address of Property)

(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.
C. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.
D. All covenants, representations and warranties in this contract survive closing.

**10. POSSESSION:** Seller shall deliver possession of the Property to Buyer upon closing and funding.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)

1. Closing shall be on or before the 10th day after the Court signs an Order granting the Trustee's motion to sell Debtor's interest in the real property to Buyer free and clear of liens, claims and encumberances with liens to follow proceeds.

2. Seller shall pay Butch Fife Realtors, License No. 0282409, a commission equal to 4% of the sales price at closing.

3. Buyer shall pay Butch Fife Realtors, License No. 0282409, a commission equal to 2% of the sales price at closing.

**12. SETTLEMENT AND OTHER EXPENSES:**
A. The following expenses must be paid at or prior to closing:
(1) Expenses payable by Seller (Seller's Expenses):
(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
(b) Seller shall also pay an amount not to exceed $ _0.00_____ to be applied to Buyer's Expenses.
(2) Expenses payable by Buyer (Buyer's Expenses):
(a) Loan origination, discount, buy-down, and commitment fees (Loan Fees).
(b) Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; mortgagee title policy with endorsements required by lender; loan-related inspection fees; photos, amortization schedules, one-half of escrow fee; transfer fees for cooperative or association membership for utility services; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee, repair inspection, underwriting fee and wire transfer, expenses incident to any loan, and other expenses payable by Buyer under this contract.
B. Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender.
C. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veteran's Housing Assistance Program or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**
A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.
B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing,

Initialed for identification by Buyer_____ and Seller _____  _____      **01A** TREC NO. 9-5

Contract Concerning _____45.001 acres Abstract A-822 and A-760_____Page Five   01-06-03
(Address of Property)

the Assessments will be the obligation of Buyer. If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property claimed  by  Seller  results  in Assessments for periods prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

14. **CASUALTY LOSS:**  If any part of the Property  is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy.  Seller's obligations under this paragraph are independent of any obligations of Seller under Paragraph 7.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract.  If, due to factors beyond Seller's control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money.  If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as  may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion ☐will ☒will not be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally.  This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party.

18. **ESCROW:** The escrow agent is not (a) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (b) liable for interest on the earnest money and (c) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.  At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer.  If both parties make written demand for the earnest money, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties. If one party makes written demand for the earnest money, escrow agent shall give notice of the demand by providing to the other party a copy of the demand.  If escrow agent does not receive written objection to the demand from the other party within 30 days after notice to the other party, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money. Escrow agent's notice to the other party will be effective when deposited in the U. S. Mail, postage prepaid, certified mail, return receipt requested, addressed to the other party at such party's address shown below. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** Seller represents that as of the Closing Date (a) there will be no liens, assessments, or security interests against the Property which will not be satisfied  out  of the sales proceeds unless securing payment of any loans assumed by Buyer and (b) assumed loans will not be in default.  If any representation of Seller in this contract is untrue on the Closing Date, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for identification by Buyer _____ and Seller _____ _____     **01A**  TREC NO. 9-5

Contract Concerning _____45.001 acres Abstract A-822 and A-760_____Page Six   01-06-03
(Address of Property)

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile as follows:

| To Buyer at: | To Seller at: |
|---|---|
| Dennis Turnbull | Linda Payne, Trustee |
| 5400 Dallas Parkway | 100 N. Main St. |
| Frisco, TX 75034 | Paris, TX 75460 |
| Telephone:( 214 )      618-3803 | Telephone:( 903 )      784-4393 |
| Facsimile:( 214 )      618-3830 | Facsimile:( 214 )      737-0586 |

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

❏ Third Party Financing Condition Addendum

❏ Seller Financing Addendum

❏ Loan Assumption Addendum

❏ Addendum for Property Subject to Mandatory Membership in an Owners' Association

❏ Addendum for Sale of Other Property by Buyer

❏ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

❏ Addendum for Coastal Area Property

❏ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

❏ Addendum for Release of Liability on Assumption of FHA, VA, or Conventional Loan Restoration of Seller's Entitlement for VA Guaranteed Loan

❏ Addendum for Unimproved Property Located in a Certificated Service Area of a Utility Service Provider

❏ Addendum for "Back-Up" Contract

❏ Other (list): _____

_____

_____

_____

Initialed for identification by Buyer _____ and Seller _____ _____     **01A**  TREC NO. 9-5

Contract Concerning _____45.001 acres Abstract A-822 and A-760_____Page  Seven 01-06-03
(Address of Property)

**23. TERMINATION OPTION: This paragraph will be a part of this contract ONLY if both blanks are filled in and Buyer has paid the Option Fee.** Buyer has paid Seller $_____ (Option Fee) for the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract.  If Buyer gives notice of termination within the time specified, the Option Fee will not be refunded, however, any earnest money will be refunded to Buyer.   The Option Fee ❑will ❑will not be credited to the Sales Price at closing.  For the purposes of this paragraph, time is of the essence; strict compliance with the time for performance stated herein is required.

**24. CONSULT AN ATTORNEY:** Real estate licensees cannot give legal advice.   READ THIS CONTRACT CAREFULLY. If you do not understand the effect of this contract, consult an attorney BEFORE signing.

Buyer's
Attorney is: __Addison Terry_____

Seller's
Attorney is: _____

_____

_____

Telephone: ( 903 )_____957-0295_____

Telephone: (___)_____

Facsimile: (903)_____957-0297_____

Facsimile: (___)_____

**EXECUTED the _____day of _____, 20____ (EFFECTIVE DATE).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

_____
Buyer

_____
Seller

_____
Buyer

_____
Seller

The form of this contract has been approved by the Texas Real Estate Commission.   TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC NO. 9-5. This form replaces TREC NO. 9-4.

Initialed for identification by Buyer_____  _____ and Seller _____  _____        **01A**  TREC NO. 9-5

Contract Concerning _____ 45.001 acres Abstract A-822 and A-760 _____ Page Eight  01-06-03
(Address of Property)

---

### SELLER'S RECEIPT

Receipt of $__0.00_____ (Option Fee) in the form of _____ is acknowledged.

Seller _____     Date _____

---

### BROKER  INFORMATION  AND  RATIFICATION  OF  FEE

Listing Broker has agreed to pay Other Broker __(see paragraph No. 11)__ of  the  total  Sales  Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker _____     Listing Broker _____

License No. _____ Telephone     License No. _____ Telephone

represents  ☐ Buyer only as Buyer's agent       represents  ☐ Seller and Buyer as an intermediary
            ☐ Seller as Listing Broker's subagent            ☐ Seller only as Seller's agent

Associate _____ Telephone     Listing Associate _____ Telephone

Broker's Address _____     Listing Associate's Office Address _____ Facsimile

Facsimile _____     Selling Associate _____ Telephone

                                  Selling Associate's Office Address _____ Facsimile

---

### RECEIPT

Receipt of ☐  Contract and ☒  $_5000.00_____ Earnest Money in the form of _____
is acknowledged.
Escrow Agent: _Republic Title Co._____     Date: _____

By: _____

_2626 Howell St._____     Telephone (_____) __(214) 855-8888__
Address

Dallas, TX_____  75204__     Facsimile: (_____) _____
City                    State        Zip

**01A**  TREC NO. 9-5